*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0562**

William J. Cavanagh, et al.,
Respondents,

vs.

Allen R. Arvig, et al.,
Appellants,

Chris Mensing, individually and d/b/a
Lakes Country Landscaping & Irrigation, Inc.,
Defendant.

**Filed November 24, 2014
Affirmed in part, reversed in part, and remanded
Halbrooks, Judge**

Otter Tail County District Court
File No. 56-CV-10-817

Matthew W. Moehrle, Eric S. Oelrich, Rajkowski Hansmeier, Ltd., St. Cloud, Minnesota; and

Paul F. Carlson, Matthew W. Van Bruggen, Kenney, Carlson & Van Bruggen, LLP, Wadena, Minnesota (for respondents)

James F. Baldwin, Timothy R. Franzen, Peter A. Koller, Moss & Barnett, P.A., Minneapolis, Minnesota (for appellants)

Considered and decided by Chutich, Presiding Judge; Halbrooks, Judge; and Ross, Judge.

UNPUBLISHED OPINION

**HALBROOKS**, Judge

Appellants Allen and Carmen Arvig appeal the district court's grant of summary judgment to respondents William and Deena Cavanagh on Arvigs' counterclaims of negligence, nuisance, trespass, and recoupment/set-off. Cavanaghs argue that this court lacks jurisdiction to review summary judgment because Arvigs failed to serve their notice of appeal on Cavanaghs' attorney for the counterclaims. Arvigs contend that the district court (1) erred in applying the concept of prosecutorial discretion to grant summary judgment, (2) failed to consider all of Arvigs' damages beyond those related to the criminal charges, (3) erred by making credibility determinations on summary judgment, and (4) erred by denying Arvigs' motion for leave to amend counterclaims to add an abuse-of-process claim. We affirm the district court's grant of summary judgment to Cavanaghs on Arvigs' counterclaims of negligence, nuisance, and recoupment/set-off and affirm the district court's denial of Arvigs' motion to amend their counterclaims. But because the district court erred as a matter of law by granting summary judgment to Cavanaghs on Arvigs' counterclaim of trespass, we reverse and remand that claim to the district court.

## FACTS

Arvigs and Cavanaghs own adjacent properties on the shore of Little Pine Lake in Otter Tail County. Beginning in 2005, Arvigs began a construction project on their property that involved the removal of existing structures, backfilling, the construction of a home, and landscaping improvements. The construction lasted through 2008. Also in

2008, Cavanaghs dug a new well and stacked straw bales on the ground covering the well during the winter. The parties later discovered that Cavanaghs' well was on Arvigs' property. In March 2009, Cavanaghs' basement flooded, and they contacted the Otter Tail County Land and Resource Management (LRM) division and complained of the water problem. Cavanaghs indicated that they thought the flooding was caused by water run-off from Arvigs' new construction and landscaping on their property. Arvigs disputed this and stated that they thought Cavanaghs' new well and stacking of straw bales over the well caused the flooding.

LRM representatives visited Cavanaghs' and Arvigs' properties to investigate Cavanaghs' complaint. During the visit to Arvigs' property, the representatives noted that Arvigs had built a large home that would have required moving "a lot of dirt." The Otter Tail County Shoreland Management Ordinance requires a "grade and fill" permit to move 21 to 299 yards of dirt and a "conditional use" permit to move more than 299 yards. LRM representatives discovered that the required permits "were missing" for the construction on Arvigs' property.

Because of the lack of permits, LRM officials issued violations to Arvigs and sent those violations to the Otter Tail County Attorney's Office for possible criminal charges. LRM recommended that the county attorney's office require Arvigs to implement a water-management plan. The county attorney's office criminally charged Arvigs with five counts of violating the Shoreland Management Ordinance. Carmen Arvig pleaded guilty to one count of violating the ordinance, a petty misdemeanor. The county dismissed all other charges against Arvigs. As part of the plea agreement, Carmen Arvig

agreed to bring their property into compliance with the Otter Tail County Shoreland Management Ordinance and to continue to work with LRM to achieve this goal. The parties agree that this agreement included implementation of the water-management plan recommended by LRM.

After the criminal case was resolved, Cavanaghs sued Arvigs for negligence, nuisance, trespass, and operating a joint enterprise with others to fulfill Arvigs' landscaping and construction plan. Arvigs counterclaimed against Cavanaghs for (I) negligently building a well and placing straw bales on the well, (II) creating a nuisance due to the construction of the well and the placement of the straw bales, (III) trespass due to the construction of the well on Arvigs' property, (IV) civil assault, and (V) recoupment and/or set-off for damages caused by Cavanaghs.

Cavanaghs moved for summary judgment on Arvigs' counterclaims, counts I, II, III, and V, arguing that (1) there were no grounds for the counts; (2) the counts were based on but-for causation, which is not sufficient to establish proximate cause; (3) the actions of LRM and the county attorney's office could not be attributed to Cavanaghs; (4) Minnesota Statutes chapter 554 barred the counts; and (5) the counts were "based on a premise that has been disproven through discovery."

The district court stated that Arvigs based their counterclaims on a theory that their damages were a direct result of Cavanaghs' complaining to LRM, which resulted in complaints brought by the county attorney's office. The district court found that Cavanaghs' complaints to LRM "did not directly cause the issuance of the criminal

4

complaint by the Otter Tail County Attorney's Office" and granted summary judgment for Cavanaghs on counts I, II, III, and V.

After the district court granted summary judgment on the four counterclaims, Arvigs moved for leave to amend the counterclaims to add an abuse-of-process claim. Arvigs argued that Cavanaghs made two demands that were outside the scope of the legal proceedings under the Shoreland Management Ordinance. First, Arvigs asserted that Cavanaghs said that they would ensure that all of Arvigs' difficulties with the county would "go away" if Arvigs paid them $150,000, and when Arvigs refused to pay, Cavanaghs sought $150,000 in restitution during the criminal prosecution. Second, Arvigs argued that Cavanaghs demanded that LRM require Arvigs to implement a water-management plan and that is why the water-management plan became a condition of the plea agreement between the county attorney's office and Carmen Arvig. The district court denied the motion to amend the counterclaims, finding that (1) there was no causal connection supporting an abuse-of-process claim because Cavanaghs made their demand for $150,000 after the county decided to issue a criminal complaint and their restitution claim was not allowed and (2) Arvigs were unable to show that the process was used for any purpose other than that contemplated by the Shoreland Management Ordinance.

The parties settled Arvigs' counterclaim for civil assault and Cavanaghs' remaining claims, and the district court entered judgment based on the stipulations of the parties. This appeal follows.

**D E C I S I O N**

**I.**

As a threshold matter, Cavanaghs argue that we lack jurisdiction to hear the appeal from summary judgment on the counterclaims because Arvigs did not serve their notice of appeal on the attorney defending them on the counterclaims, as required by Minn. R. Civ. App. P. 125.02.

The appellate rules require that "[a]n appeal shall be made by filing a notice of appeal with the clerk of the appellate courts and serving the notice on the adverse party or parties within the appeal period." Minn. R. Civ. App. P. 103.01, subd. 1. The rules state that "[s]ervice on a party represented by counsel shall be made on the attorney." Minn. R. Civ. App. P. 125.02. The rules do not define "the attorney," but this court has indicated that "the attorney" means the attorney who represented the party at the time of service. *See Savre v. Ind. Sch. Dist. No. 283*, 642 N.W.2d 467, 470-71 (Minn. App. 2002) (concluding that the service was effective on the attorney served because he was designated as the party's primary legal counsel at the time of service).

Arvigs listed Paul F. Carlson and Matthew S. Van Bruggen as the "attorneys for [Cavanaghs] for the [Arvigs'] counterclaims" on Arvigs' notice of appeal. Cavanaghs argue that Carlson was never an attorney for Cavanaghs relating to the counterclaims at issue on summary judgment. Instead, Cavanaghs argue that Eric S. Oelrich represented them on the counterclaims, and Arvigs should have served Oelrich.

Carlson filed the civil complaint against Arvigs, stating that he was the attorney for Cavanaghs. Oelrich filed the motion for summary judgment and indicated that he was

6

the attorney for Cavanaghs "as to counterclaims." The record demonstrates that Carlson represented Cavanaghs with respect to the claims against Arvigs, and Oelrich defended Cavanaghs on Arvigs' counterclaims. But the record also indicates that Oelrich had not been involved in the proceedings after the district court entered summary judgment on four of the five counterclaims. Carlson continued to represent Cavanaghs through resolution of the final counterclaim against Cavanaghs and the remaining claims against Arvigs. At the time of service of the notice of appeal, Carlson represented Cavanaghs and had an attorney-client relationship with Cavanaghs. The rules do not explicitly require service on every attorney who represents a party. Instead, the rules state that if a party has counsel, the attorney for the party should be served with the notice of appeal. Here, Arvigs served their notice of appeal on the attorney representing Cavanaghs at the time of service of the notice of appeal. We conclude that we have jurisdiction to hear the appeal in its entirety because Arvigs properly served the notice of appeal on Cavanaghs' attorney.

## II.

Arvigs argue that the district court erred in granting summary judgment to Cavanaghs on their counterclaims for negligence, nuisance, trespass, and recoupment/set-off. Arvigs argue that the district court erred in granting summary judgment for three reasons: (1) by sua sponte basing its judgment on the theory of prosecutorial discretion when the county attorney's office is not a party, (2) by failing to consider damages caused by Cavanaghs unrelated to the filing of criminal charges, and (3) by making credibility determinations on summary judgment.

7

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that either party is entitled to a judgment as a matter of law." Minn. R. Civ. P. 56.03. We review de novo the district court's grant of summary judgment, and we view the evidence in the light most favorable to the nonmoving party. *Dukowitz v. Hannon Sec. Servs.*, 841 N.W.2d 147, 150 (Minn. 2014). "The moving party has the burden of showing an absence of factual issues before summary judgment can be granted." *Anderson v. State, Dep't of Natural Res.*, 693 N.W.2d 181, 191 (Minn. 2005). But a genuine issue of material fact does not exist "when the nonmoving party presents evidence which merely creates a metaphysical doubt as to a factual issue and which is not sufficiently probative with respect to an essential element of the nonmoving party's case to permit reasonable persons to draw different conclusions." *DLH, Inc. v. Russ*, 566 N.W.2d 60, 71 (Minn. 1997).

## A.   Prosecutorial Discretion

Arvigs contend that the district court erred by sua sponte raising the matter of prosecutorial discretion in its decisions because the county attorney's office is not a party, none of the parties raised the issue, and the parties did not challenge the ability of prosecutors to decide who to charge.

Arvigs' counterclaims for negligence, nuisance, and trespass each assert that Cavanaghs registered a complaint with LRM, which caused an investigation and subsequent response from Arvigs and that Arvigs suffered damages due to the county's involvement. The district court found that Arvigs' claims of negligence, nuisance, and

8

trespass rested "on the theory that [Arvigs] were compelled to incur expenses to respond to complaints filed by [LRM]." The district court explained that this was not a valid basis for viable tort claims because the county employees took actions that were independent from Cavanaghs' complaints. The district court relied on the doctrine of prosecutorial discretion to clarify that Cavanaghs did not cause Arvigs' criminal charges because prosecutors have "substantial discretion in what charges to file and what not to file." The district court found that this was not a case "when the prosecutorial discretion is improperly overborne by the complaining citizen." Therefore, the district court determined that Arvigs failed to demonstrate a genuine issue of material fact regarding causation for the damages incurred due to the criminal charges. Stating that Cavanaghs' complaints to LRM did not directly cause the issuance of the criminal complaint by the county attorney's office, the district court granted summary judgment to Cavanaghs. We conclude that the district court properly referenced prosecutorial discretion in its larger analysis of causation in its summary-judgment determination.

**B.      Damages Unrelated to the Filing of the Criminal Complaint**

Arvigs argue that the district court failed to consider damages that Arvigs suffered that are separate from the damages stemming from the criminal charges. Arvigs assert that they suffered damages resulting from their response to LRM's involvement and from the installation of a well and straw bales on their property.

As for damages resulting from LRM's involvement, Arvigs argue that Cavanaghs caused LRM to require imposition of a water-management plan. But LRM representatives stated that Cavanaghs did not pressure or threaten them. In addition,

LRM does not have the authority to require conditions such as a water-management plan. LRM can recommend such plans, but only the county attorney can require a plan. The fact that Cavanaghs suggested a water-management plan to the LRM representatives does not mean that Cavanaghs caused the damages suffered by Arvigs by the subsequent implementation of the plan at the direction of the county attorney's office. We therefore conclude that there is no genuine issue of material fact as to whether Cavanaghs are liable for the damages resulting from LRM's involvement and that Cavanaghs are entitled to judgment as a matter of law on this basis.

Arvigs also argue that they have valid tort claims independent of any county action. Arvigs' counterclaims allege damages for: emotional distress; loss of the enjoyment of life and property; annoyance, inconvenience, and discomfort; and insult, humiliation, and outrage. On summary judgment, the district court did not address these claimed damages and did not explicitly analyze every element to determine whether a genuine issue of material fact existed for each counterclaim. Instead, the district court summarized Arvigs' arguments as resting on the involvement of the county attorney's office, which caused Arvigs to incur expenses. On de novo review, we analyze each claim raised for genuine issues of material fact. *STAR Ctrs., Inc. v. Faegre & Benson, L.L.P.*, 644 N.W.2d 72, 76 (Minn. 2002).

### 1.    Negligence

"To recover for a claim of negligence, a plaintiff must prove (1) the existence of a duty of care, (2) a breach of that duty, (3) an injury, and (4) that the breach of the duty of care was a proximate cause of the injury." *Domagala v. Rolland*, 805 N.W.2d 14, 22

(Minn. 2011). Causation is ordinarily a fact question, and "it is only in the clearest of cases that the question of negligence becomes one of law." *Van Tassel v. Hillerns*, 311 Minn. 252, 256, 248 N.W.2d 313, 316 (1976). But "when reasonable minds could reach only one conclusion, it is a question of law." *Johnson v. Paynesville Farmers Union Co-op. Oil Co.*, 817 N.W.2d 693, 712 (Minn. 2012) (quotations omitted), *cert. denied*, 133 S. Ct. 1249 (2013).

Arvigs allege that Cavanaghs owed them a duty "to refrain from conduct which interrupts or diverts the natural flow of surface water" on Arvigs' property and that Cavanaghs negligently caused surface water to be diverted to Cavanaghs' home through digging the well and stacking the straw bales on the well. Arvigs allege that this negligence caused a complaint to be registered with LRM and prompted an investigation, which caused Arvigs to incur "the expense of professionals, consultants, representatives and contractors to respond to the County and to develop and implement a water surface management plan." In addition, Arvigs allege that Cavanaghs' negligence caused them to suffer emotional distress. But Arvigs point to no evidence that they suffered emotional distress.

Arvigs' negligence claim fails on the proximate-causation element. LRM conducts itself according to the Shoreland Management Ordinance, and the county attorney's office exercises prosecutorial discretion. The government did not pursue its action against Arvigs because of Cavanaghs' negligent conduct. The government pursued its action against Arvigs because Arvigs violated sections of the Shoreland Management Ordinance. This is one of the rare instances where "reasonable minds could

11

reach only one conclusion." We conclude that there is no genuine issue of material fact regarding proximate causation on the negligence claim and that Cavanaghs are entitled to judgment as a matter of law on the negligence claim.

### 2. Nuisance

Nuisance is defined as "[a]nything which is injurious to health, or indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property." Minn. Stat. § 561.01 (2012). An action in nuisance "may be brought by any person whose property is injuriously affected or whose personal enjoyment is lessened by the nuisance." *Id.*

Arvigs claim that Cavanaghs' well and straw bales on Arvigs' property constituted a nuisance, which caused a complaint to be registered with the county and resulted in an investigation and response from Arvigs. In addition to claiming damages for the expenses incurred by responding to the county, Arvigs allege that Cavanaghs "directly caused the loss of the enjoyment of life and property" and "annoyance, inconvenience, and discomfort." But Arvigs admitted in their depositions that the well did not interfere with the use and enjoyment of their own property, and the record contains no evidence of interference. We conclude that the evidence, viewed in the light most favorable to Arvigs, does not raise a genuine issue of material fact on the element of interference with the free use and comfortable enjoyment of property. Cavanaghs are entitled to judgment as a matter of law on the nuisance claim.

Arvigs also seem to assert that Cavanaghs' complaint registered with LRM is a nuisance in itself. A federal case, applying Minnesota law, held that a theory of

12

interference with use and enjoyment of property based on the appellant "devot[ing] the time and energy to defending against enforcement actions by the [government]" does not support a claim of nuisance. *Uland v. City of Winsted*, 570 F. Supp. 2d 1114, 1120 (D. Minn. 2008). We agree. Registering a complaint with the county, without more, is not "an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property." Minn. Stat. § 561.01. We affirm the district court's grant of summary judgment for Cavanaghs on Arvigs' nuisance counterclaim.

### 3. Trespass

Arvigs argue that the district court ignored damages that are inherent in any trespass. "In Minnesota, a trespass is committed where a plaintiff has the 'right of possession' to the land at issue and there is a 'wrongful and unlawful entry upon such possession by defendant.'" *Johnson*, 817 N.W.2d at 701 (quoting *All Am. Foods, Inc. v. Cnty. of Aitkin*, 266 N.W.2d 704, 705 (Minn. 1978)). "Actual damages are not an element of the tort of trespass." *Id.* Damages are not required for a claim of trespass because "requiring that a property owner prove that she suffered some consequence from the trespasser's invasion before she is able to seek redress for that invasion offends traditional principles of ownership by endangering the right of exclusion itself." *Id.* at 704 (quotation omitted).

Here, Arvigs pleaded in their counterclaim that Cavanaghs dug a well on Arvigs' property without authorization and consent, and then Cavanaghs stacked straw bales in and around the well. It is undisputed that the well was on Arvigs' property. And the record demonstrates that Cavanaghs placed the well on Arvigs' property wrongfully.

13

Cavanaghs did not have Arvigs' consent to enter their property and dig the well because Arvigs did not learn that the well was on their property until after they began implementing the water-management plan. Because trespass does not require actual damages, the district court's finding that Cavanaghs' trespass did not cause any damages alleged by Arvigs does not automatically warrant summary judgment for Cavanaghs.[1] Arvigs have pleaded a prima facie case for trespass. Cavanaghs have not shown that they are entitled to judgment as a matter of law. Therefore, we conclude that summary judgment was improperly granted on this counterclaim. We reverse the district court's grant of summary judgment on the trespass counterclaim and remand to the district court.

## C. Credibility Determinations

Arvigs assert that the district court erred by making credibility determinations on summary judgment. "The district court's function on a motion for summary judgment is not to decide issues of fact, but solely to determine whether genuine factual issues exist." *DLH, Inc.*, 566 N.W.2d at 70. Accordingly, a district court deciding a summary-judgment motion "must not make factual findings or credibility determinations." *Geist-Miller v. Mitchell*, 783 N.W.2d 197, 201 (Minn. App. 2010). "Weighing the evidence and assessing credibility on summary judgment is error." *Hoyt Props., Inc. v. Prod. Res. Grp., L.L.C.*, 736 N.W.2d 313, 320 (Minn. 2007).

In its summary-judgment memorandum, the district court stated that "[t]he essential element of the counterclaims is credible evidence that the charges were the

---

[1] Without any actual damages, "the trespasser is liable for nominal damages." *Johnson*, 817 N.W.2d at 701.

direct result of inappropriate interference with the charging process" and that "there is no credible evidence to support [the counterclaims]."

In *Geist-Miller,* this court noted that the district court's summary-judgment memorandum contained "language that signals inappropriate fact-finding." 783 N.W.2d at 202. We cautioned that fact-finding language "invites dispute and encumbers review" but concluded that "independently reviewed, the district court's summary judgment was proper." *Id.* Here, the district court accurately stated the summary-judgment standard, noting explicitly that a "district court's function on a motion for summary judgment is not to decide issues of fact." After reviewing the record and determining that there were no genuine issues of material fact, the district court made a poor choice by using the word "credible" to describe the evidence. But it did not explicitly make a credibility determination. As in *Geist-Miller,* "[t]he district court's evident error may lie in its language and not in employment of an improper standard." *Id.* We conclude that, on independent review, the district court's grant of summary judgment was proper, with the exception of the trespass claim.

### III.

Arvigs argue that the district court abused its discretion by denying their motion for leave to amend the counterclaims to add an abuse-of-process claim. After a responsive pleading is served, "a party may amend a pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Minn. R. Civ. P. 15.01. The district court has broad discretion "to grant or deny an amendment, and its action will not be reversed absent a clear abuse of

discretion." *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn. 1993). "A district court should allow amendment unless the adverse party would be prejudiced, but the court does not abuse its discretion when it disallows an amendment where the proposed amended claim could not survive summary judgment." *Johnson*, 817 N.W.2d at 714 (citations omitted).

The elements of an abuse-of-process claim are (1) "the existence of an ulterior purpose" and (2) "the act of using the process to accomplish a result not within the scope of the proceedings in which it was issued, whether such result might otherwise be lawfully obtained or not." *Kellar v. VonHoltum*, 568 N.W.2d 186, 192 (Minn. App. 1997), *review denied* (Minn. Oct. 31, 1997). The question is "whether the process was used to accomplish an unlawful end for which it was not designed or intended, or to compel a party to do a collateral act which he is not legally required to do." *Dunham v. Roer*, 708 N.W.2d 552, 571 (Minn. App. 2006) (quotation omitted). "The bare allegation that respondent had some greater scheme is insufficient to establish a genuine issue of material fact concerning an unlawful end." *Id.* at 572. When the actions taken are authorized by statute, the "exercise of a statutorily given right cannot . . . form the basis for liability in a tort action." *Kellar*, 568 N.W.2d at 192.

For the first element, Arvigs argued that Cavanaghs had two ulterior purposes underlying their actions with the county: to receive $150,000 from Arvigs and for Arvigs to implement a water-management plan. Arvigs asserted that Cavanaghs demanded $150,000 in exchange for making the matter with the county "go away," and when that demand failed, Cavanaghs attempted to obtain $150,000 through the restitution process.

16

Arvigs also asserted that Cavanaghs pressured LRM to require a water-management plan. For the second element, Arvigs argued that no entity had authority to directly require Arvigs to pay Cavanaghs or to implement a water-management plan, and therefore, the result was not within the scope of the proceedings.

The district court considered whether Cavanaghs' purported demand for $150,000 "to make the matter go away" raised a sufficient factual issue to allow amendment of Arvigs' counterclaims. But the district court found that if Cavanaghs made the alleged demand for payment, it occurred after the county's determination to move forward with the complaint regarding Arvigs' violation of the ordinance. The district court also found that the county attorney's office did not allow Cavanaghs' claim for restitution and that no causal connection supported an abuse-of-process claim. The district court also found that the Shoreland Management Ordinance has a broad public purpose to protect the shoreland in Otter Tail County and that Arvigs were unable to show the process was used for any other purpose than that contemplated by the ordinance.

Even if Cavanaghs had an ulterior purpose when they contacted the county, Cavanaghs did not accomplish a result outside the scope of the proceedings. Cavanaghs did not obtain the $150,000 they sought from Arvigs, either through their demands or through the restitution process. In addition, the county attorney's office was the only entity with the power to require a water-management plan when Carmen Arvig pleaded guilty to violating the ordinance. We conclude that Arvigs failed to produce evidence sufficient to establish the existence of a genuine issue of material fact on an abuse-of-

17

process claim and that the district court did not abuse its discretion by denying the motion to amend.

In summary, we affirm the district court's denial of the motion to amend and affirm the district court's grant of summary judgment for Cavanaghs on Arvigs' negligence, nuisance, and recoupment counterclaims, but we reverse summary judgment on the trespass counterclaim and remand the trespass counterclaim to the district court.

**Affirmed in part, reversed in part, and remanded.**